# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ARJUNA GANDIVA WHITEHEAD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-1353-G |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Arjuna Gandiva Whitehead brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Upon review of the administrative record (Doc. No. 10, hereinafter "R. \_")[1], and the arguments and authorities submitted by the parties, the Court affirms the Commissioner's decision.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff was found disabled in December 2008 due to the limitations caused by his schizophrenia. R. 16, 59. An agency redetermination performed in 2015 found that Plaintiff had shown medical improvement related to his ability to work, and his disability benefits ceased in December 2015. R. 59. Plaintiff protectively filed a new SSI application on January 7, 2016. R. 16, 159-68. Plaintiff initially alleged a disability-onset date of July

---

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

1, 2008. R. 16, 159. Plaintiff subsequently amended his alleged onset date to January 7, 2016. R. 16, 37. Following a denial of his application initially and on reconsideration, a hearing was held before an administrative law judge ("ALJ") on January 9, 2017. R. 31-58, 89-92, 98-100. In addition to Plaintiff, a vocational expert ("VE") testified at the hearing. R. 53-55. The ALJ issued an unfavorable decision on March 30, 2017. R. 13-26.

The Commissioner of Social Security uses a five-step sequential evaluation process to determine entitlement to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his amended onset date. R. 18. At step two, the ALJ found that Plaintiff had the severe medically determinable impairments of: schizoaffective disorder, bipolar type; attention deficit hyperactivity disorder ("ADHD"); and generalized anxiety disorder. R. 18. The ALJ also found that Plaintiff had the nonsevere impairments of obesity, vision disorder, hypertension, and an umbilical hernia. R. 18-19. At step three, the ALJ found that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 19-20.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all his medically determinable impairments. R. 20-25. The ALJ found that Plaintiff had the residual functional capacity to

> perform a full range of work at all exertional levels, but with the following non-exertional limitations: [Plaintiff] can understand, remember and carry[] out simple, routine, and repetitive tasks. [Plaintiff] can relate to supervisors and co-workers on a superficial work basis. [Plaintiff] can respond to usual work situations. [Plaintiff] can have no contact with the general public.

R. 20. At step four, the ALJ considered the hearing testimony of the VE and found that Plaintiff was not capable of performing any past relevant work. R. 25.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of his age, education, work experience, and RFC—could perform. R. 25-26. Relying upon the VE's testimony regarding the degree of erosion to the unskilled occupational base caused by Plaintiff's additional limitations, the ALJ found that Plaintiff could perform the medium, unskilled occupations of laundry worker and machine packager, and the light, unskilled occupation of inspector/packer, and that such occupations offer jobs that exist in significant numbers in the national economy. R. 25-26, 53-54.

Plaintiff's request for review by the SSA Appeals Council was denied on October 26, 2017, and the unfavorable determination of the ALJ stands as the Commissioner's final decision. R. 1-7; 20 C.F.R. § 416.1481.

STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004)

3

(internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

In this action, Plaintiff argues that the ALJ erred by (1) failing to properly consider the functional limitations stemming from Plaintiff's obesity and hernia, (2) failing to consider functional limitations assessed by Plaintiff's physician Matthew McTague, DO, (3) failing to comprehend the full extent of the restrictions caused by Plaintiff's schizophrenia and not assessing functional RFC limitations consistent with Plaintiff's condition, and (4) improperly assigning little weight to the opinion of consultative examiner Miracle Goetz, PsyD. *See* Pl.'s Suppl. Br. (Doc. No. 22) at 6-24.

A. *Evaluation of Plaintiff's Obesity and Hernia*

Plaintiff argues that the ALJ erred by not considering the impact of Plaintiff's obesity and hernia when assessing the RFC. *See id.* at 7-9.

1. *Obesity*

In evaluating Plaintiff's obesity at step two, the ALJ expressly considered Social Security Ruling 02-01p. The ALJ further found:

> As indicated in SSR 02-01p, obesity may have an adverse impact upon co-existing impairments. In addition, obesity may limit an individual's ability to sustain activity on a regular and consistent basis during an eight-hour, five-day week or equivalent schedule. However, there is no evidence of this in this matter.

R. 19; *see* SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002).

Plaintiff states that given his height and weight, his BMI would render him morbidly obese. Pl.'s Suppl. Br. at 8. Plaintiff argues that the ALJ appeared to "undersell" the severity of Plaintiff's obesity by using the term "overweight," which does not "provoke the same visual image" as "morbidly obese." *Id.* (emphasis omitted). Plaintiff also contends that the ALJ never properly evaluated the impact of Plaintiff's obesity on his ability to work, and that the ALJ simply "lists boilerplate and false assumptions" in his decision. *Id.*

The Court rejects these arguments. As an initial matter, the ALJ did not only refer to Plaintiff as "overweight"; he also expressly found that Plaintiff's body mass index ("BMI") of greater than 40 meets the relevant guidelines definition of obesity and that Social Security Ruling 02-1p required him to consider Plaintiff's "obesity" at steps two, three, and four. R. 19. Further, Social Security Ruling 02-1p provides that there is "no specific level of weight or BMI that equates with" a severe or nonsevere impairment and that descriptive terms for levels of obesity such as "morbid" do not by themselves establish whether obesity is or is not a severe impairment for disability purposes. SSR 02-1p, 2002 WL 34686281, at *4.

Plaintiff did not "testify that his weight contributed to his inability to engage in activities in any way," and he specifically denied having any severe physical impairments during the hearing. *Briggs v. Astrue*, 221 F. App'x 767, 771 (10th Cir. 2007) (internal

5

quotation marks omitted); R. 37-38. Plaintiff nevertheless argues that Plaintiff's obesity caused him to "pop[]" an umbilical hernia, reasoning that deconditioning and weight "cause separation of muscle which causes a hernia." Pl.'s Suppl. Br. at 8.[2] But Plaintiff cites no evidence in the record to support his speculation that his obesity was the cause of his umbilical hernia. And Plaintiff points to no evidence of omitted functional limitation that was necessity in light of his obesity. Plaintiff therefore "has not shown that [his] obesity alone, or in combination with other impairments, resulted in any further limitations" or precluded him from performing work. *Smith v. Colvin*, 625 F. App'x 896, 899 (10th Cir. 2015) (citing SSR 02-1p, 2002 WL 34686281); *see also Callicoatt v. Astrue*, 296 F. App'x 700, 702 (10th Cir. 2008) (rejecting challenge to ALJ's failure to consider claimant's obesity where claimant pointed to no evidence or testimony "showing that her obesity exacerbated her other impairments"); *Woods v. Colvin*, No. CIV-13-763-HE, 2014 WL 2801301, at *5 (W.D. Okla. May 28, 2014) (R. & R.) (rejecting claimant's challenge to ALJ's consideration of obesity where claimant "fail[ed] to state what 'sufficient

---

[2] Plaintiff here mischaracterizes the record, affirmatively stating that Plaintiff underwent hernia surgery "after the hearing" and arguing that this posthearing timing is the reason that Plaintiff failed to report any physical impairments at the hearing. Pl.'s Suppl. Br. at 7, 8-9. The record, however, clearly reflects that Plaintiff's hernia-repair surgery took place on September 1, 2016—about four months *before* the January 9, 2017 hearing. Plaintiff failed to correct this representation to the Court even after Defendant suggested the inaccuracy in her brief and despite filing an amended brief to correct an unrelated "incorrect interpretation" of case law. Doc. No. 20. As Plaintiff's counsel is aware, this Court does not "favorably view arguments based on misrepresentations of the record." *Kirkpatrick v. Colvin*, 663 F. App'x 646, 650 n.2 (10th Cir. 2016); *see also Harper v. Berryhill*, No. CIV-16-1173-SLP, 2017 WL 6378020, at *3 (W.D. Okla. Nov. 28, 2017) (R. & R.), *adopted*, 2017 WL 6375982 (W.D. Okla. Dec. 13, 2017).

limitations' the ALJ should have included"), *adopted*, 2014 WL 2801304 (W.D. Okla. June 19, 2014).

### 2. Hernia

The ALJ evaluated Plaintiff's umbilical hernia at step two, finding the impairment to be nonsevere in nature. R. 18. Plaintiff complains that the ALJ did not properly consider his hernia because: (i) "there is not one iota of evidence from the treating surgeon" that Plaintiff's September 2016 hernia repair "is yet successful"; and (ii) the RFC contains no lifting restrictions, "and that is simply ridiculous for a man of this girth" because heavy lifting "will . . . produce" an unknowable quantity of additional hernias. Pl.'s Suppl. Br. at 4, 5.

As to Plaintiff's first point, the only relevant evidence in the record is consistent with a successful surgery. On September 2, 2016, the treating surgeon, Dr. Matthew McTague, released Plaintiff one day after his surgery in "stable" condition, with an instruction to return in two weeks. R. 385, 399. When Plaintiff returned on September 13, 2016, the doctor noted that Plaintiff's pain was lessening and his incisions were healed and instructed Plaintiff to follow up as needed. R. 400-01. There is nothing in the record to suggest that Plaintiff experienced any postsurgery complications or ever required further treatment from the surgeon. And Plaintiff points to no evidence reflecting that he had any continued problems or limitations relating to his hernia or the repair. As mentioned, Plaintiff acknowledged at the January 2017 hearing that he had no physical impairments. R. 38-39. The ALJ did not err in failing to consider evidence and allegations that did not exist.

As to Plaintiff's second point, Dr. McTague did initially release Plaintiff with a 20-pound lifting restriction. R. 386. The surgeon did not reimpose such a restriction on Plaintiff's follow-up visit, however. R. 401 (Dr. McTague noting "No Orders" and instructing Plaintiff to follow up as needed). Plaintiff's conclusory connection between weight, lifting, and the onset of new hernias is not supported by citation to the evidence of record and does not show that reversible error on the part of the ALJ.

Plaintiff relatedly contends that the ALJ should have expressly considered and weighed the 20-pound lifting restriction as a treating-source opinion and given it the deference afforded to such opinions under Social Security regulations. *See* Pl.'s Suppl. Br. at 9-10; *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); 20 C.F.R. § 416.927(c)(2). The Commissioner generally gives the highest weight to the medical opinions of a "treating source," which includes a physician who has "provided [the claimant] with medical treatment or evaluation" during a current or past "ongoing treatment relationship" with the claimant. 20 C.F.R. § 416.927(a)(2), (c). As noted, however, Dr. McTague did not reimpose that restriction, or order any lifting restrictions at all, at Plaintiff's more recent visit. R. 400-01. Plaintiff offers no support for the proposition that such an upon-discharge restriction is intended to continue indefinitely--especially when Plaintiff's own testimony fails to support the need for such a restriction.[3]

---

[3] Even if the ALJ had erred by failing to adopt a 20-pound lifting restriction, any such error would have been harmless. The 20-pound restriction would have limited Plaintiff to light work, *see* SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983), but the ALJ, relying upon the VE's testimony, specifically found that Plaintiff could perform the light unskilled job of inspector/packer, for which there exist 220,000 jobs in the national economy. R. 25-26, 53-54. The Tenth Circuit has indicated that this quantity of jobs is sufficient to constitute

### B. Evaluation of Plaintiff's Schizoaffective Disorder

Although the ALJ found Plaintiff's bipolar-type schizoaffective disorder to be a severe disorder, Plaintiff argues that the ALJ failed to "get" Plaintiff's schizoaffective disorder. Pl.'s Suppl. Br. at 12. In support of this argument, Plaintiff quotes at length from descriptions of schizoaffective and bipolar disorder taken from the WebMD website. *See id.* at 6, 12-16, 23-34. Plaintiff argues, without citation to authority, that the ALJ did not understand that "Schizophrenia patients are captives to their own disease" and that their major problems are "application, motivation, and consistency." *Id.* at 14. Plaintiff cites WebMD's conclusion that an individual with schizoaffective disorder would not be able to work until his hallucinations and delusions were under control, and states that WebMD offers a medical opinion that is "worth listening to." *Id.*[4]

Plaintiff's diagnosis of bipolar-type schizoaffective disorder is not in dispute. The ALJ did not evaluate a general description of these conditions taken from the internet, but instead assessed Plaintiff's specific symptoms as reflected in the medical record. R. 19-25. Contrary to Plaintiff's assertion, a generic online description of a medical condition

---

a significant number in the national economy and has found harmless error in such circumstances. *See, e.g.*, *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (finding harmless error where the properly considered occupations offered 152,000 jobs in the national economy).

[4] Plaintiff's counsel is reminded that the Court is not persuaded or impressed by snide ad hominem attacks upon SSA and state-agency personnel. *See* Pl.'s Suppl. Br. at 19 ("[A]ccording to the ALJ, . . . the magic employment dust of this specific ALJ's RFC proves that he can, all of a sudden go to and sustain, full-time work . . . . Think of it, . . . this ALJ is the vocational and medical guru that divinely knows he can now work."); *see also id.* at 12, 20, 21, 22.

does not qualify as a medical opinion relevant to a particular claimant under Social Security regulations. Rather, "medical opinions" are "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). A description of a mental impairment published on a website does not constitute a medical opinion, and an anonymous author who has never examined Plaintiff or examined the medical evidence does not qualify as an "acceptable medical source." *Id.* § 416.902.

Plaintiff further contends that the ALJ failed to capture the "specific, *functionally distinct* limitations" stemming from Plaintiff's schizoaffective disorder. Pl.'s Suppl. Br. at 16. Plaintiff contends that the mental restrictions in the RFC are insufficient to accommodate Plaintiff's limitations. *See id.* at 17. But in assessing the mental limitations in Plaintiff's RFC, the ALJ considered Plaintiff's subjective allegations, the medical record, and the available opinion evidence, and assessed multiple, distinct functional limitations consistent with this evaluation. R. 19-25; *see* R. 20 (limiting Plaintiff to: "simple, routine, and repetitive tasks"; relating to supervisors and coworkers only on "a superficial work basis"; and "no contact with the general public"). Reweighing the evidence, and assessing unspecified functional limitations based on Plaintiff's recitation of the evidence and the description of Plaintiff's condition featured on WebMD, would amount to substituting the court's judgment for that of the Commissioner in a manner inconsistent with Tenth Circuit case law. *See Bowman*, 511 F.3d at 1272; *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent

conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." (alteration, citation, and internal quotation marks omitted)).

C. *Evaluation of Dr. Goetz's Opinion*

In March 2016, Dr. Goetz examined Plaintiff and issued a Psychological Report of her findings. R. 327-31 (Ex. 3F). Dr. Goetz stated in her Report that Plaintiff "would likely function best in a low stress environment." R. 330. The ALJ gave little weight to this assessment, finding that "low stress" was "vague and not defined." R. 24.

Plaintiff argues that this weight assignment was "disingenuous" and a "blatant fabrication" since the ALJ "knew exactly what psychologist Goetz meant" and "was taught what [Social Security Ruling 85-15] was all about." Pl.'s Suppl. Br. at 21.[5]

---

[5] Plaintiff's cited Ruling provides:

> The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances. The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day. . . . . Thus, the mentally impaired may have difficulty meeting the requirement of even so-called "low stress" jobs.
>
> Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job . . . . Any impairment-related limitations created by an individual's response to demands of work, however, must be reflected in the RFC assessment.

SSR 85-15, 1985 WL 56857, at *6 (Jan. 1, 1985).

11

In assessing Plaintiff's RFC, the ALJ included several stress-related mental limitations, including a restriction to remembering and carrying out simple, routine, and repetitive tasks, a limitation to relating to supervisors and coworkers on a superficial work basis, and a requirement that Plaintiff have no contact with the general public. R. 20. Plaintiff does not propose any additional limitations that would accompany a restriction to "low stress" work. Thus, even if Plaintiff's undeveloped argument were sufficient to show that the ALJ erred in evaluating Dr. Goetz's opinion, Plaintiff has not shown how an assignment of greater weight to the opinion would have resulted in a materially different RFC and therefore "cannot demonstrate any prejudice" from the ALJ's alleged error. *Covington v. Colvin*, 678 F. App'x 660, 666-67 (10th Cir. 2017) (noting that giving certain physicians' opinions greater weight "would not have helped" the claimant where the ALJ had "included similar limitations" in the RFC).

## CONCLUSION

For all these reasons, Plaintiff has not shown a lack of substantial evidence in the record for the ALJ's RFC determination or any reversible legal error by the ALJ. The decision of the Commissioner is AFFIRMED. A separate judgment shall be entered.

IT IS SO ORDERED this 28th day of March, 2019.

_____
CHARLES B. GOODWIN
United States District Judge